### CITY OF TOLEDO V. SCHULTERS.

1. NON-JOINDER OF ONE OF TWO DISTINCT PARTIES.

   Where, in an action for the possession of land against two distinct defendants, each having a distinct and independent claim to the property, one of the defendants is in default for plea or answer, and the case was tried on the claims of the plaintiff and the second defendant, in proceedings in error being instituted, such party in default is not a necessary party to and need not be joined in such error proceedings.

2. OMISSION FROM DEED OF ONE OF TWO LOTS PURCHASED.

   Where the purchase of two lots is negotiated and agreed upon, but by a mistake of the conveyancer one of the lots is omitted in the description of the property in the deed of conveyance, which is not discovered for several years, when proceedings are instituted for the reformation of the deed, a court of equity will correct the mistake on the ground that it was a mutual one. And as between the parties, no claim of innocent third parties intervening, such correction of the mistake will not be refused on the ground of negligence on the part of the grantee when it is more than likely that negligence lies at the bottom of most of such mistakes. The theory of equity is that the thing which the parties themselves intended to do, shall by the court be ordered done.

ERROR to the Court of Common Pleas of Lucas county.

KING, J.

This is a petition in error seeking to reverse the judgment of the court of common pleas.

August 25, 1893, the defendant in error here brought suit against the T., W. V. & O. Railroad company, to recover the possession of certain real estate described in her petition, being a lot of land twenty-four feet wide and one hundred feet in length or depth.

After the commencement of the action, the city of Toledo was, on its motion, given leave to become a defendant, and it filed an answer, and sometime afterwards an amended answer, in which it admitted that the legal title to the lot described in the petition was in the plaintiff, but set forth that in 1892, it commenced proceedings in the probate court, to appropriate certain property for park purposes, and that Mary C. Schulters was one of the defendants in that proceeding, and was alleged to own the northeasterly twenty-four feet of the southwesterly thirty feet of the northwesterly one hundred feet of lot fifty-six (56) in Stickney's addition to the city of Toledo. That at that time she was not the owner and did not have the title to the premises described in her petition, but the same were owned by Harriet S. Root, her mother, who also at the same time owned other real estate in that vicinity. And the city desiring to obtain the real estate owned by the said Harriet S. Root, made an arrangement with her to purchase of her said real estate in that vicinity; and shortly after the filing of said application in the probate court, to wit, August 16, 1892, the said Root did transfer the said property in pursuance of said agreement, excepting that she did not transfer the lot of land described in the plaintiff's petition here, it being understood that she would convey that to her daughter. That owing to the said agreement the said Root was not made a party

to the proceedings in the probate court; and on the same day that she conveyed to the city she also conveyed the premises described in the petition to the plaintiff, who became then for the first time invested with legal title. That shortly thereafter negotiations were carried on between the park commissioners and the plaintiff for the purchase of all the property she owned, being the property described in her petition in this action, and it was finally agreed that for $3,800, in bonds, given her, she would convey to the said city of Toledo all of her said property. That on the 5th day of December, 1892, the plaintiff and her husband conveyed to a trustee the northeasterly twenty-four feet of the southwesterly thirty feet of the northwesterly one hundred feet of lot fifty-six (56) in Stickney's addition, but did not convey the property described in her petition. That it was the understanding that she was to sell and convey, and the city to purchase, all the property she owned, but that the party drawing the conveyance, who was her attorney, by mistake, copied the description as set forth in the abstract belonging to her and made prior to the filing of the application in the probate court, and that the property described in the plaintiff's petition was by mistake omitted from the deed, and said mistake was not discovered until the commencement of this action, and asked that the petition of the plaintiff to recover the possession of the land in question be dismissed, that the mistake in the conveyance be corrected, and plaintiff ordered to convey the premises described in her petition to the city. A reply was filed to this answer, and the case came on for trial and was heard by the court, jury being waived, and the judgment rendered for the plaintiff against the defendant.

That judgment the defendant is seeking to reverse; but in its petition in error has not made the railroad company a party defendant. It is claimed the petition in error should be dismissed for this reason, and a motion is formally filed to that effect. We think that motion should be overruled. This action stood for trial upon the issue formed by the pleadings filed by the plaintiff below and the city, and the issue thus presented was equitable, and from the decree rendered upon that trial the dissatisfied party could appeal, or might as the city has done, prosecute error. If on the trial the issue thus presented was determined in favor of the city, such decree would have resulted in dismissing the plaintiff's petition. If it had been determined, as it was, against the city, it would then stand for trial if there was an answer by the railroad company upon the action at law for the recovery of possession of the property. The railroad company not having answered, the plaintiff below was, no doubt, entitled to its judgment as upon default. But there was no occasion for making the railroad company a party to this proceeding in error.

Several errors are assigned, but none of them are prejudicial to the plaintiff in error, and need receive no notice at our hands, except the claim that the judgment of the court is not sustained by the evidence or law.

The evidence in the case shows that, in May, 1895, the plaintiff below and her mother, Mrs. Root, who resided at Painesville, were the owners of certain property on Summit street. Mrs. Schulters and her husband resided upon and occupied premises known as No. 1828 Summit street. The house known as 1828, was the northerly half of a double house and was situated upon a lot fronting on the street, twenty-four

feet in width and extending back two hundred feet to what is known as Water street. The front one hundred feet was then owned by the plaintiff, the rear one hundred feet by her mother. Adjoining the rear one hundred feet, on the south, with the other half of the double house, was 24x100 feet owned by one Bailey. Adjoining Bailey and the rear one hundred feet was a piece ninety-two feet front on Summit street and two hundred feet deep, belonging to Mrs. Root. With that state of the title, negotiations were commenced to purchase all the property owned by Mrs. Root and Mrs. Schulters. On May 31, 1892, Mrs. Schulters' husband, acting for these two women, submitted to the agent of the park board the following proposition:

"As per your request of yesterday, regarding price of Summit street property owned by Mrs. Schulters and Mrs. Root, for park purposes, will give you the following figures: Premises known as 1828 Summit street 24x200 feet, $4,000. Property back of 1826 Summit street, 24x100 feet, $10 per foot, 240. Summit street frontag, 92x100, forty dollars per foot, $3,680. Total, $7,920 This offer to continue only sixty days from date."

This proposition made by Mrs. Schulters and Mrs. Root, embraced all the property that either or both owned in that vicinity. The written evidence shows that on July 23, 1892, the park board, by a resolution, authorized the president to notify Mrs. Root, "that her proposition to sell her Summit street property, at $40.00 per foot front, 92x200 on Summit, and ten dollars for the twenty-four feet adjoining, fronting on Water street, had been accepted."

Here, so far as written testimony is concerned, occurs the first confusion. Since it assumes that the 92 feet on Summit street and the 24x100 feet in rear of No. 1826 was all that Mrs. Root owned; whereas, as I have stated she also owned the other lot 24x100 in the rear of No. 1828. There is evidence showing some conversation between the agents of the different parties, but nothing was accomplished, and on August 1, is the next written evidence. Messrs. King & Tracy addressed a letter to Mr. Walbridge, the president of the board of park commissioners, in which they say:

"Your favor of the 25th inst., to Mrs. Dr. Root, of Painesville, has been referred to us with instructions to say that Mrs. Root will not accept bonds of the city of Toledo for her property, as suggested in your letter. She is willing to accept the price named by her, to wit, $3,920, in cash for said property.

"We also represent the property owned by Mrs. Schulters, known as 1828 Summit street, and adjoining the property belonging to Mrs. Dr. Root. In case you desire to negotiate for this property further, will be glad to hear from you."

From this letter, I observe that $3,920 was the sum total of the price named in the proposition of May 31, for the premises described as 92 feet on Summit and 200 feet deep, and 24x100 in rear of No. 1826. Also it should be noticed that the premises known as 1828 Summit street did not adjoin either of these pieces of property, except the rear 100 feet that did adjoin Mr. Root's property; and I should say here, in explanation, that the rear 100 feet, as I call it, is the property in suit, which Mrs. Schulters claims she did not convey. The front 100 feet is what she did convey. Now, it is evident from the letter of King & Tracy that they spoke of the same property described in the proposition of May 31, to wit, No. 1828 Summit street, 24x200 feet. Following this

transaction in the order of its date, August 6, King & Tracy wrote a second letter, in which they say they are instructed by Mrs. Root that she will sell the property described in former letters provided she can receive $3,900 in cash. The evidence shows that this proposition for $3,900 was accepted. On August 11, we find King & Tracy writing Mr Schulters, enclosing a deed from Harriet S. Root and husband to a trustee for the city, which deed was for the 92x200 feet premises, and 24x100, being the piece in the rear of No. 1826, and also on this date, a deed prepared by them from Harriet S. Root and her husband to Mary C. Schulters, for the 24x100 feet in the rear of the premises she then owned. The letter requests that they be forwarded to Mrs. Root for execution. That part of the transaction was soon closed up, the city taking a deed of all the property owned by Mrs. Root and Mrs. Schulters in that vicinity, except the single piece described in the letter of May 31, as to 1826, 24x200 feet. The deeds sent Mrs. Root were executed by her on the 16th of August, and soon after delivered to the park board.

On the 11th of August the city solicitor commenced the proceedings in the probate court that have been referred to, in that proceeding and he described Mrs. Schulters's property as being 24x100 feet on Summit street, and that unquestionably was the land owned by her at that time. These proceedings awaited service of different other parties by publication, and negotiations were continued with reference to the purchase of the Schulters property. The first definite item of evidence is a letter from King & Tracy, addressed to Mr. and Mrs. Schulters, saying:

"We have lately had some negotiations with the board of park commisioners looking to a settlement of condemnation proceedings, whereby said board seeks to appropriate your property on Summit street."

The expression "your property on Summit," viewed in the light of the proposition of May 31st, and the fact that on August 16th her mother had conveyed to Mrs. Schulters 24x100 feet, then must have meant the premises first described in the proposition of May 31st, as 1828 Summit street, 24x200 feet. They further say in the same letter:

"We have now an intimation that an adjustment can be had upon the following terms:

"For due conveyance by warranty deed of 24 feet front owned by you, we can get you $3,800."

The original proposal was $4,000.

On the same day Messrs. King & Tracy wrote another letter, in which they speak of the possession of the property, and say that they can arrange to have Mrs. Schulters allowed possession until March 31, 1893.

There is some other correspondence not very material, the result of all which was an agreement to convey the property that had been proposed. A deed was drawn, and on December 5th executed by Mr. and Mrs. Schulters. The deed in question described the front 100 feet. It was prepared by King & Tracy, and they say that it was prepared from an abstract, and from a description of the property in the appropriation proceedings. Mrs. Schulters also claims that when the proposition was accepted, she inquired of her attorneys if it included more than the front 100 feet, and they said no. The attorneys do not recollect this conversation. She also testifies that when the deed was executed, she knew it only included the front 100 feet.

Is there enough from this evidence to say that this judgment should

be reversed on the ground that it fairly appears as the weight of the evidence that here was a mutual mistake of the parties?

First—That as this property was conveyed by a deed whose terms were plain and explicit, it cannot be disturbed, and no correction decreed unless the proof beyond a reasonable doubt shows a mistake to have been made.

Second—That no mutual mistake has been shown, since there is evidence that Mrs. Schulters knew she was only conveying the front 100 feet, and in that connection it is said that no weight can be given to the proposition of May 31st, since by its terms it expired in sixty days, and any negotiations had between the parties after that date must have been independent of that proposition. To the court it appears there is no such necessary view to take of the evidence. The evidence does not show that the proposition was withdrawn. On the contrary, it shows continuous negotiations with reference to it, both as to the property of Mrs. Root and that of Mrs. Schulters. There is nothing in the evidence to show a breaking of negotiations other than might be inferred from the commencement of appropriation proceedings; but as the applications filed in the probate court embraced a large amount of other property, it may well be that the city concluded it advisable to have those proceedings under way, and it was necessary to publish for service upon a large number of persons, to have that publication in process of completion. It seems clear to the court that the proposition of May 31st, constituted the basis of all negotiations had with reference to this property. In that proposition there is no division of the property between Mrs. Root and Mrs. Schulters; and so far as it is concerned, all property described might have been owned by the two jointly. The acceptance of the proposition as to a part of the property did not preclude the continuance of negotiations as to the balance, and we are quite clear from a careful reading of this testimony, that the proposition finally accepted, to pay $3,900 in bonds, was made by the board upon the supposition and expectation that they were to receive the property described in the proposition of May 31st.

When the deed came to be drawn, it is clear that the attorneys of Mrs. Schulters had no idea that there was a division to be made in that property, but they consulted an abstract prepared before August 15th, and consulted the application to the probate court, and from it they learned that Mrs. Schulters owned 24x100 feet, forgetting evidently, that since the preparation of those papers, she had acquired an additional amount of land from her mother, which additional amount, embraced in the proposition of May 31st, was deducted out of the deed her mother had made to the city.

We are inclined to think that both these parties acted upon that plain misunderstanding. But it is said that this mistake is not mutual; and also in that connection it is said that the party asking its correction must not have been negligent. We do not understand such to be the rule, where the controversy arises between the parties to the mistake. It would be difficult to understand why the correction of a mistake should be refused on the ground of negligence, when it is more likely that negligence lies at the bottom of most of such mistakes. The theory of equity is that the thing which the parties themselves intended to do, shall by the court be ordered done.

With the question as to Mrs. Schulters' knowledge, and its effect, we have had more difficulty. It is not clear from this record, to me, that

5 C. C. 18

Mrs. Schulters had the knowledge which she claims now to have had. Nothing that was done between the parties indicates that she knew at the time of the conveyance that she was only conveying one-half the area of the land she owned; but if she did know, we are very clear in our judgment that she also knew that the city made its proposition upon the basis of the 200 feet, and that it expected to receive a deed therefor. And if that fact appears in the testimony, then, upon well considered authority, it is clear that a court of equity will correct such a mistake upon the ground that it is a mutual one.

Without reading, I cite cases as follows: 44 N. H., 66 Cal., 280; 52 Conn., 483; 109 Ind., 354.

Our conclusion is, that it appears from this record that the city purchased and intended and expected to receive a conveyance of the piece of land described in the petition; in other words, of the lot 24x200, and that upon that evidence the court ought to have decreed a conveyance of the balance of that property to the city, and that the judgment therefore is against the evidence and the law.

*Kinney & Newton*, Attorneys for Plaintiffs in Error.

*Hurd, Brumback & Thatcher*, Attorneys for Defendants in Error.

## REVERSAL OF JUDGMENT.